**IN THE UNITED STATES DISTRICT COURT**

**FOR THE WESTERN DISTRICT OF TEXAS**

**SAN ANTONIO DIVISION**

FILED
OCT - 9 2026
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY ______ DEPUTY CLERK

**MICHELLE BARRIENTES VELA, Plaintiff,** §

§

**v.** § **Civil Action**

**No. SA26CA5993** SA-26-CV-5993-MA HJB

§

**BEXAR COUNTY, TEXAS, Defendant.** §

## PLAINTIFF'S FIRST AMENDED COMPLAINT AND JURY DEMAND

Plaintiff Michelle Barrientes Vela, proceeding pro se, files this First Amended Complaint and Jury Demand against Defendant Bexar County, Texas, and alleges as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this civil-rights action under 42 U.S.C. § 1983 against Bexar County, Texas. Plaintiff alleges that official County decisions, communications, and ratification materially contributed to the initiation or continuation of criminal legal process through a materially inaccurate and misleading narrative concerning events at Rodriguez Park and related records.

2. Plaintiff's criminal prosecution ended in her favor when the Eighth Court of Appeals reversed her convictions and rendered judgments of acquittal. Plaintiff seeks compensation for constitutional injuries caused by Bexar County's own actionable conduct, not merely because the County employed persons who allegedly acted wrongfully.

3. This complaint is separate from Plaintiff's action against former Texas Ranger Bradley Maurice Freeman and Bexar County Sheriff's Office Deputy Ryan Rios Escobedo, Michelle Barrientes Vela v. Bradley Maurice Freeman and Ryan Rios Escobedo, Civil Action No. SA-26-CV-5752-XR. Plaintiff does not seek double recovery.

4. Events concerning Plaintiff's removal from elected office and public statements made in 2019 are pleaded as background evidence relevant to motive, knowledge, sequence, policymaker participation, ratification, and causation. Plaintiff does not assert a stand-alone damages claim based solely on her removal from office or solely on a media publication.

## JURISDICTION AND VENUE

5. This Court has federal-question jurisdiction under 28 U.S.C. §§ 1331 and 1343 because Plaintiff asserts claims arising under the United States Constitution and 42 U.S.C. § 1983.

6. Declaratory relief is authorized, where otherwise appropriate, by 28 U.S.C. §§ 2201 and 2202.

7. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in Bexar County, Texas, within the San Antonio Division of the Western District of Texas.

## PARTIES

8. Plaintiff Michelle Barrientes Vela is a resident of Bexar County, Texas. At the relevant time, she was the elected Constable of Bexar County Precinct 2 and a licensed Texas peace officer.

9. Defendant Bexar County, Texas is a local governmental entity subject to suit under 42 U.S.C. § 1983 for its own official policy, custom, final-policymaker decisions, or ratification. Defendant may be served in accordance with Federal Rule of Civil Procedure 4(j)(2) and applicable Texas law.

## RELEVANT COUNTY OFFICIALS AND EMPLOYEES

10. Nelson W. Wolff served as Bexar County Judge during the September 2019 events. Plaintiff identified him as a relevant Bexar County policymaker and public spokesperson. He is not named as an individual-capacity defendant in this action.

11. Justin Rodriguez served as the Bexar County Commissioner for Precinct 2. Plaintiff identifies him as a participant in Commissioners Court decisions and public events concerning Plaintiff. He is not named as an individual-capacity defendant in this action.

12. Sergio "Chico" Roderiguez served as the Bexar County Commissioner for Precinct 1. Plaintiff concerning Plaintiff. He is not named as an individual-capacity Defendant in this action.

13. Javier Salazar served as Bexar County Sheriff and later became Plaintiff's political opponent in the 2020 sheriff's election. Plaintiff identifies him as a participant in the public and law-enforcement environment surrounding the investigation. He is not named as an individual-capacity defendant in this action.

14. Monica Ramos served as a Bexar County public-information officer. Plaintiff identifies her as a Bexar County representative who communicated disputed allegations concerning Plaintiff while Plaintiff's criminal proceeding was pending. She is not named as an individual-capacity defendant in this action.

15. Kenneth McGlamery served as Bexar County's Heritage Parks Manager in 2019 and later as Bexar Heritage Parks and Recreation Director. He testified that he ran the parks as the Bexar County commissioners' designated representative. His emails and testimony concern the County's request for Easter security at Rodriguez Park, the distinction between County-funded park coverage and privately funded pavilion security, and the mistaken belief that a pavilion reservation had been canceled.

16. Henry Guerrero served as the onsite park manager at Rodriguez Park. Under oath, Guerrero identified himself as a 22-year County employee. He is also the Bexar County employee speaking in the May 2, 2019, recording described below. Guerrero is not named as an individual-capacity defendant in this action.

## FACTUAL ALLEGATIONS

### Rodriguez Park Security and the Developing Narrative

17. On Easter 2019, Bexar County used separate arrangements for general holiday coverage at Rodriguez Park and security for private pavilion reservations. General Easter coverage was Bexar County funded. A private reservation holder was required to arrange and pay for security depending on attendance, alcohol, or other applicable requirements for law enforcement security.

18. March 21, 2019, email titled Additional Easter Security" reflects Kenneth McGlamery requested a quote from Precinct 2 for deputies to provide general Easter security at Rodriguez Park on April 21, 2019.

19. Kenneth McGlamery's trial testimony likewise distinguished Bexar County-funded Easter security from security paid for by a private pavilion patron.

20. On April 21, 2019, Jesus Reyes held a private event at a reserved pavilion at Rodriguez Park. Plaintiff informed Jesus Reyes that security was required because

alcohol was being consumed at the private event. The payment at issue concerned security for that private pavilion event, not payment for the separate Bexar County-funded Easter Sunday coverage.

21. Plaintiff disputes later accounts that she demanded an unlawful cash payment, threatened Jesus Reyes, or removed responding Bexar County Sheriff Deputies from Rodriguez Park.

22. Kenneth McGlamery admitted under oath that he had been informed Henry Guerrero caused the cancellation confusion by telling Plaintiff that the Easter reservation was canceled when the canceled reservation was actually for the preceding Saturday. Kenneth McGlamery agreed that Plaintiff therefore had every right to believe the pavilion was canceled, that she paid for use of the barbecue area and moved when the error was discovered, and that Henry Guerrero made the mistake. Kenneth McGlamery further testified that the patron was required to pay for security if he wished to continue consuming alcohol, that collecting the payment at the park was consistent with the applicable procedure, and that the patron's complaint about being required to pay for security was invalid. Kenneth McGlamery admitted that he did not return to the FBI to correct the misunderstanding after receiving the information identifying Guerrero's error.

23. The Bexar County VisiNet Incident Detail Report bearing incident number BCSO-2019-0749798, related dispatch and unit-activity information, and the Bexar County Constable Office Precinct 2 internal investigation identified as 2019-IA-000110 contain information relevant to whether Bexar County Sheriff Deputies' patrol units entered Rodriguez Park or encountered Plaintiff there.

24. Henry Guerrero's testimony independently confirmed that the County cancellation record showed Pavilion 1 was canceled for Saturday, April 20, but not for Easter Sunday, April 21. Henry Guerrero nevertheless maintained that Plaintiff first called him on Saturday and denied telling her the Sunday reservation was canceled. When confronted, Guerrero recognized his Bexar County phone number and the displayed April 19 date; he disputed the date and later denied sending the message but admitted he could be mistaken and testified that no one else used his phone. Plaintiff alleges that these sworn admissions and contradictions are material to credibility, notice, and the accuracy of the narrative later supplied to investigators.

**May 2, 2019, Henry Guerrero Recording**

25. On May 2, 2019, two individuals recorded a conversation with Henry Guerrero at Rodriguez Park. Plaintiff presently possesses a copy of that recording and understands that the person who made it may possess the original file.

26. The video depicts Henry Guerrero speaking at the park about pavilion rental procedures, park-security arrangements, the April 21 events, Plaintiff, and the Precinct 2 Constable's Office. Guerrero also displays or refers the visitors to a news report concerning Plaintiff.

27. During the recorded conversation, Henry Guerrero states, in substance, "they're trying to remove her," referring to Plaintiff. He also calls Plaintiff "crooked" and repeats negative allegations concerning personnel and payment practices within Plaintiff's office.

28. Guerrero does not identify the persons he means by "they" or explain the complete source of his information. Plaintiff therefore does not allege their identities as an established fact. The identities, communications, and sources underlying Guerrero's statement are matters for discovery.

29. During the same conversation, Henry Guerrero describes his own practice of bringing in individuals to work when the park was short-staffed and placing them on compensatory time or hourly time, with his supervisor's knowledge. Plaintiff alleges that Guerrero's description is relevant to bias and credibility and County phone records because he portrayed allegedly comparable personnel practices in Plaintiff's office as proof that Plaintiff was "crooked."

30. The May 2 recording occurred seven days before May 9, 2019, the date on which Texas Ranger Freeman testified that he became involved after receiving a request from the Bexar County District Attorney's Office. Plaintiff was not advised that she was under investigation before May 9, 2019.

31. The timing and content of Henry Guerrero's statements support a reasonable inference that an accusatory narrative and discussions about removing Plaintiff were circulating among individuals connected to Bexar County operations before Plaintiff was advised of the investigation. Plaintiff pleads the recording as evidence of chronology, knowledge, bias, and the need for discovery; she does not allege that the recording alone proves a Bexar County-wide agreement or an unconstitutional policy.

32. Plaintiff seeks discovery concerning communications, records, and information involving Henry Guerrero, Kenneth McGlamery, Henry Guerrero's supervisors, and the Bexar County Heritage Parks; including its supervisors and Staff, the Bexar County Sheriff, sheriff deputies, command Staff, Bexar County Sheriff Investigators, personnel, supervisors and Bexar County District Attorney's Office; including prosecutors, all Chief of staff, Bexar County District Attorney investigators, and any other person or entity that

possessed knowledge concerning Plaintiff, Rodriguez Park, the events of April 21, 2019, the investigation, the development of communication of allegations against the Plaintiff, or efforts to investigate, prosecute, remove, or replace the Plaintiff.

## County Records and Material Contradictions

33. County emails, dispatch materials, unit-location information, internal-investigation materials, park-management records, and testimony contained information capable of confirming or contradicting the allegations developing against Plaintiff.

34. Plaintiff alleges that park-management information supplied by Kenneth McGlamery included incorrect information that was not timely corrected, while McGlamery's later testimony placed the mistaken pavilion-cancellation belief with Henry Guerrero rather than Plaintiff.

35. Plaintiff alleges that Bexar County-controlled records and testimony contradicted material portions of the public and investigative narrative, including who made the reservation mistake, the separate sources of payment for general Easter coverage and private pavilion security, and whether the responding Bexar County Sheriff Deputies entered the park or encountered Plaintiff.

## Search and Coordinated Public Messaging

36. On September 23, 2019, the Texas Rangers, FBI, DPS Troopers and the Bexar County Sheriff Deputies executed a search warrant at the Bexar County Constable's Office Precinct 2. Bexar County Judge Nelson Wolff, Commissioner Justin Rodriguez, Sheriff Javier Salazar, and other officials appeared in or participated in public communications concerning the search and Plaintiff's status.

37. Plaintiff alleges that Bexar County Judge Wolff publicly used demeaning language "Wacko" concerning Plaintiff and stated that if it was up to him there would be no constables. These statements were made before the criminal charges were resolved and contributed to an official Bexar County narrative treating disputed allegations as established facts.

38. Plaintiff alleges that the public presentation of the Bexar County Judge Nelson Wolff, Bexar County Commissioner Justin Rodriguez, and the Bexar County Sheriff Javier Salazar together on the day of the search is relevant to chronology and to whether Bexar County policymakers coordinated the County's response. Plaintiff does not allege an unlawful agreement merely from their joint appearance.

## Live News Statement and Removal Process

39. During live KSAT 12 online coverage, Plaintiff discussed a possible future campaign for Bexar County Sheriff. Short excerpts were subsequently published and reported as a formal announcement of candidacy.

40. County officials relied on the reported statement in initiating a process to treat Plaintiff as having automatically resigned under article XVI, section 65 of the Texas Constitution. Bexar County Commissioners Court voted concerning the alleged vacancy and the process for replacing Plaintiff.

41. Litigation followed concerning the Bexar County's authority and Plaintiff's status. Plaintiff alleges that the complete broadcast, pleadings, hearing transcripts, orders, and Commissioners Court records are the best evidence of what was said and officially decided.

42. Plaintiff alleges that Bexar County decisionmakers who publicly advocated her removal participated in the governmental process that resulted in selecting or appointing her replacement. These events are pleaded as evidence of motive and policymaker participation, not as an independent damages claim based solely on removal from office.

## County Public Information Communications

43. While Plaintiff was awaiting trial, a private investigator working for Plaintiff contacted Bexar County public-information officer Monica Ramos while presenting himself as a journalism student. Plaintiff possesses a recording of the conversation.

44. During the recorded conversation, Monica Ramos stated that an individual claimant came forward only after seeing news coverage concerning Plaintiff and pursued a claim through the County's third-party claims administrator without submitting a complaint or investigative report to the County.

45. Monica Ramos stated that the administrator possessed contractual discretion to settle claims below a stated threshold and that the County did not separately approve an approximately $5,000 payment. Ramos offered to provide the governing contract and identify the relevant provision.

46. Monica Ramos also described disputed allegations against Plaintiff, including cash demands, threats of arrest, pocketing money, destruction of records, and the involvement of the Texas Rangers and FBI. These statements were made while Plaintiff's prosecution remained pending.

47. Plaintiff pleads the Monica Ramos recording as evidence concerning Bexar County information practices, knowledge, repetition of allegations, and possible ratification. Plaintiff does not allege that the Ramos recording alone proves fabrication of evidence used in the criminal proceeding.

## Criminal Legal Process and Restraints

48. On January 23, 2020, a Bexar County grand jury returned an indictment against Plaintiff. Plaintiff voluntarily surrendered, was taken into custody, handcuffed, placed in ankle shackles, publicly escorted past assembled media, booked, brought before a judge, and required to post bond.

49. Plaintiff was later prosecuted in Cause No. 2021-CR-4408 for tampering with or fabricating physical evidence. The prosecution concerned Rodriguez Park records and allegations arising from the investigation described above.

50. During the prosecution, and three weeks before the start of the criminal trial, Plaintiff was subjected to additional court appearances, bond requirements, geographic restrictions, reporting obligations to a Bexar County pre-trial probation officer, breathalyzer testing requirements, alcohol restrictions, and restrictions prohibiting attendance at political events or voting poll locations.

51. Plaintiff alleges that materially inaccurate, incomplete, or misleading information concerning Rodriguez Park and related records was used to commence or continue legal process against her. Plaintiff further alleges that Bexar County records capable of correcting material portions of the narrative were disregarded, withheld, or not reconciled.

## Favorable Termination

52. On October 3, 2024, the Eighth Court of Appeals reversed Plaintiff's convictions and rendered judgments of acquittal in Barrientes v. State, No. 08-23-00113-CR.

53. The Texas Court of Criminal Appeals refused the State's petition for discretionary review on February 19, 2025, and the appellate mandate issued on April 9, 2025. Expunction orders were subsequently entered.

54. Plaintiff relies on October 3, 2024, as the earliest potential favorable-termination date for limitations purposes. Her prosecution-based constitutional claims accrued no earlier than favorable termination. **See McDonough v. Smith, 588 U.S. 109 (2019); Thompson v. Clark, 596 U.S. 36 (2022).**

## BEXAR COUNTY POLICY CUSTOM AND FINAL POLICYMAKER CONDUCT

55. Bexar County Commissioners Court is the governing body of Bexar County. Plaintiff alleges that decisions formally adopted by Bexar Commissioners Court concerning her status, the alleged vacancy, and the County's official response were Bexar County decisions rather than unauthorized acts of subordinate employees.

56. Plaintiff alleges that Bexar County policymakers publicly adopted and reinforced an accusatory narrative while Bexar County-controlled records contained material contradictions that were not publicly acknowledged, corrected, or reconciled.

57. Plaintiff alleges, on information and belief, that Bexar County officials and departments shared information concerning the Rodriguez Park allegations, the investigation, the September 2019 search, claims arising after media coverage, Plaintiff's removal, and the criminal proceedings. The identities, dates, recipients, and complete contents of nonpublic communications remain within the Bexar County's possession.

58. Plaintiff alleges that the Bexar County's official decisions, ratification of a materially misleading narrative, and failure to correct known material inaccuracies were moving forces in the continuation of legal process and the resulting deprivation of liberty. Plaintiff does not rely on respondeat superior.

## COUNT ONE

## Fourth Amendment Claim Under 42 U.S.C. § 1983

59. Plaintiff incorporates paragraphs 1 through 57.

60. The Fourth Amendment, applied to local governments through the Fourteenth Amendment, protects against unreasonable seizure pursuant to legal process. An official violates that protection by knowingly, intentionally, or recklessly contributing materially false statements or omissions to legal process when the corrected information would not establish probable cause. **See Hughes v. Garcia, 100 F.4th 611, 620 (5th Cir. 2024).**

61. Plaintiff alleges that criminal legal process was initiated or continued using materially inaccurate and misleading information and without probable cause after material falsehoods are removed and material omissions supplied. A government actor's deliberate fabrication of evidence that causes a loss of liberty is independently actionable under the Constitution. **See Dean v. Phatak, 162 F.4th 555, 565 (5th Cir. 2025).**

62. Plaintiff alleges that County-controlled dispatch, GPS, internal-investigation, park-management, claims, and communications records contained material information contradicting the narrative used against her, but the County, through actionable official conduct, adopted, communicated, or ratified the materially misleading narrative.

63. Plaintiff alleges that final Bexar County policymakers knew of material contradictory information or deliberately disregarded the need to verify and correct the narrative before

**Adopting and reinforcing it through official County action.**

64. The criminal proceeding ended without a conviction when the court of appeals reversed and rendered judgments of acquittal.

65. As a direct and foreseeable result of the alleged constitutional violation and actionable Bexar County conduct, Plaintiff suffered arrest, custody, restraints imposed through bond and court orders, trial, conviction, loss of liberty, emotional distress, reputational injury, lost income, legal expenses to the extent recoverable, and impairment of professional and political opportunities.

## COUNT TWO

## Municipal Liability Under Monell

66. Plaintiff incorporates paragraphs 1 through 64.

67. **Under Monell v. Department of Social Services, 436 U.S. 658 (1978)**, Bexar County is liable under 42 U.S.C. § 1983 only for its own official policy, widespread custom, final-policymaker decision, or ratification that was the moving force behind a constitutional violation. A single decision may constitute official policy when made by an official or body possessing final authority over the subject. **Pembaur v. City of Cincinnati, 475 U.S. 469, 480-81 (1986).**

68. At the pleading stage, a plaintiff must allege specific facts showing an official policy promulgated or ratified by a policymaker and a nonconclusory relationship between that policy and the constitutional injury. **Groden v. City of Dallas, 826 F.3d 280, 284-86 (5th Cir. 2016); Peña v. City of Rio Grande City, 879 F.3d 613, 622 (5th Cir. 2018).** The Fifth Circuit recently applied those principles in reversing dismissal where an elected official alleged specific facts connecting municipal targeting, policymaker notice and participation, and an arrest for alleged tampering with a governmental record. **Thompson v. McGehee, No. 25-10196, slip op. at 23-27 (5th Cir. July 17, 2026).**

69. Plaintiff alleges that the Bexar County Commissioners Court exercised final County authority over the formal decisions concerning Plaintiff's status, the alleged vacancy, the Bexar County's official response, and the process for selecting or appointing her replacement. The formally recorded Bexar Commissioners Court actions are alleged as final County decisions, not merely the conduct of subordinate employees.

70. Plaintiff pleads a connected sequence of specific Bexar County conduct: Henry Guerrero's May 2 statement that "they're trying to remove her" before Plaintiff was advised of the investigation; Bexar County park-management information that misassigned responsibility for the pavilion mistake; Bexar County records contradicting whether Bexar County Sheriff deputies entered the park; Bexar County policymakers'

public adoption of the accusatory narrative during the execution of the search warrant in September of 2019 search; Bexar County Commissioners Court's formal action concerning Plaintiff's removal and replacement; and a Bexar County public-information employee's later repetition of detailed criminal allegations while the prosecution remained pending.

71. Plaintiff alleges that final Bexar County policymakers adopted, communicated, or ratified the materially misleading narrative despite actual or constructive notice of Bexar County-controlled information contradicting material portions of it. Plaintiff further alleges that the County's official decisions and ratification foreseeably caused or materially contributed to the continuation of legal process and were moving forces behind the Fourth Amendment injury described in Count One.

72. Plaintiff does not rely merely on failure to investigate or the employment relationship. She alleges deliberate Bexar County action: formal policymaker decisions and official communications that adopted and reinforced the challenged narrative after County records and employees supplied materially contradictory information.

73. Plaintiff seeks compensatory and nominal damages and appropriate declaratory relief but does not seek punitive damages against Bexar County.

**PRESERVATION OF DISTINCT CLAIMS**

74. Plaintiff does not seek double recovery for injuries claimed in Civil Action No. SA-26-CV-5752-XR. This action concerns Bexar County's own actionable policy, policymaker decisions, ratification, and use or handling of County-controlled information. The separate action concerns the alleged personal conduct of Texas Ranger Bradley M. Freeman and Bexar County Sheriff Deputy Ryan Rios Escobedo.

75. Bexar County Sheriff Javier Salazar and the other Bexar County officials or Bexar County employees identified in this complaint are not presently named as individual-capacity defendants unless expressly listed as defendants in the caption. If records produced through discovery establish that Javier Salazar or another identified person personally participated in a timely constitutional violation, Plaintiff may promptly move for leave to amend under Federal Rule of Civil Procedure 15(a)(2) to assert an individual-capacity claim supported by specific facts. Any proposed amendment remains subject to the applicable statute of limitations, relation-back requirements, service requirements, and available immunities or defenses. This paragraph neither asserts a present claim against Bexar County Sheriff Javier Salazar or another nonparty nor substitutes group allegations for the personal-participation requirement.

**DAMAGES**

76. As a direct and proximate result of Defendant's actionable conduct, Plaintiff suffered loss of liberty, physical restraint, emotional distress, mental anguish, humiliation, reputational harm, loss of earnings and earning capacity, loss of employment and professional opportunities, political and campaign harm, family disruption, legal expenses to the extent recoverable, and other compensable injuries to be proved.

77. Plaintiff seeks $6,000,000 in compensatory damages for the injuries described in paragraph 75, to the extent caused by Defendant's actionable conduct and supported by the evidence at trial. This request includes recoverable past and future economic losses and noneconomic injuries, without duplicate recovery. The amount requested is subject to proof and is not alleged to be a verified total of economic losses. Plaintiff also seeks nominal damages where appropriate, prejudgment and post-judgment interest, taxable costs, and all other relief authorized by law.

## PRAYER

**WHEREFORE**, Plaintiff Michelle Barrientes Vela respectfully requests that Defendant Bexar County, be required to appear and answer and that, after trial, the Court: a. enter judgment declaring, to the extent declaratory relief is available, that Defendant violated Plaintiff's constitutional rights; b. award Plaintiff $6,000,000 in compensatory damages, or such amount as the jury determines is supported by the evidence; c. award nominal damages where appropriate; d. award prejudgment and post-judgment interest and taxable costs as allowed by law; and e. grant all other legal or equitable relief to which Plaintiff proves entitlement.

**JURY DEMAND**

78. Plaintiff demands a jury trial on every issue triable by jury.

Respectfully submitted,

______________________________

MICHELLE BARRIENTES VELA

Plaintiff, Pro Se

7602 Linkview St.

San Antonio Texas, 78240

Email: michellebvelaforsheriff@gmail.com

Date: 10-9-26